JOHNSON, J.
dissents and assigns reasons.
11 Respondents were co-counsel for a criminal defendant charged in Lafayette Parish with two counts of aggravated rape, in which one of the victims was the defendant’s sixteen-year old daughter. Initially, the victim had always cooperated with the prosecutor in handling the case; however, days before the trial, the victim met her father at respondents’ office and her willingness to cooperate changed. At that time, Mr. Stockstill drafted and presented the victim with the following three documents: 1) an affidavit stating that it was the victim’s desire to “talk about [the] situation” in an effort to “reconcile;” 2) an affidavit that the victim wanted to dismiss the charges against the defendant; and 3) a confidentiality agreement, which stated that all statements made during the meeting were “privileged,” made “without prejudice to any party’s legal position,” and were “non-discoverable and inadmissible for any purpose in any legal proceeding.” The agreement also provided that neither the victim nor the defendant could “be compelled to disclose or to testify in any proceedings as to information disclosed” at the meeting. Finally, the agreement stipulated that an injunction could be obtained to prevent disclosure of any confidential information in violation of the confidentiality agreement, and that breach of the agreement would expose the breaching party to liability for “costs, expenses, 1 ¡liabilities and fees, including attorney’s fees, that may be incurred as a result of such breach.” Neither Mr. Stanford nor Mr. Stockstill advised the victim that she could consult an attorney before signing the documents. Rather, Mr. Stanford asked the victim to read and sign the documents, and she did. At some point after the meeting, the victim was subpoenaed to testify at the defendant’s criminal trial. However, after the meeting, she refused to cooperate with the assistant district attorney, instead, she referred the prosecution to “her” attorney, Mr. Stocks-till.
Mr. Stockstill testified that the agreement was primarily intended to protect himself from an allegation by his client of ineffective assistance of counsel, as well as protect the two parties to the meeting *234 against a future civil action. Mr. Stockstill denied repeatedly that the confidential agreement intended to inhibit the victim from testifying in the criminal trial as to what her father, the defendant, told her in the meeting, as such an agreement would be unenforceable.
Based on these factual findings, the Hearing Committee determined that respondents violated Rules 3.4(a), 3.4(f), 4.1, 4.3, 8.4(a), 8.4(c), and 8.4(d), finding that respondents intended to create the impression in the victim’s mind that the confidentiality agreement legally barred her from testifying in the criminal trial about a meeting with her father, and the statements made in the meeting. Respondents also caused a previously cooperative witness to become fearful and unwilling to cooperate with the prosecution, as she had previously done. The Hearing Committee determined that respondents’ conduct was intentional in drafting the confidentiality agreement. The language in the agreement was put there with the specific purpose of creating in the victim’s mind the illegality of telling anyone about the secret meeting and intimidating the victim from testifying to it at trial. The fact that only the affidavits were initially provided to the assistant district attorney, while the | (¡confidentiality agreement was withheld, buttresses this conclusion.
The committee likewise found the conduct of Mr. Stockstill’s co-counsel, Mr. Stanford, to be intentional. Although Mr. Stanford did not draft the confidentiality agreement, he read it and notarized the document, thus, was aware of its contents. Mr. Stanford intended to prevent the victim from disclosing the fact of the meeting or its contents to the state.
The following factors largely impacted my decision: refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victim, and substantial experience in the law of law (Mr. Stanford was admitted in 1993 and Mr. Stockstill was admitted in 1995). In my view, respondents’ conduct resulted in actual harm to the system of justice and to the victim. Hence, the appropriate discipline is suspension from the practice of law for six months.